**In re SELDON.**

**No. 45720.**

District Court, E. D. New York.

Feb. 19, 1945.

Ernest I. Shapiro, of New York City, for bankrupt.

Henry W. Parker, of New York City, for trustee.

GALSTON, District Judge.

These are cross-motions which relate to an order of the referee holding that the trustee in bankruptcy is entitled to recover the sum of $2,063.69 paid to the Equitable Life Assurance Society and the Metropol-ital Life Insurance Company, to increase the cash surrender values of policies issued by those companies on the life of the bankrupt. The order recites that those pay-

ments were made in fraud of, and with intent to hinder, delay and defraud creditors. The facts may be briefly stated:

On April 30, 1929, the Morris Plan Company of New York obtained a judgment against the bankrupt in the amount of $535. Prior thereto, on February 18, 1925, the Metropolitan Life Insurance Company had issued a life insurance policy in the amount of $5,000 upon the life of the bankrupt, the wife, Annette Seldon, being named as beneficiary. On October 15, 1929, the Equitable Life Assurance Society issued its policy of $10,000 upon the life of the bankrupt, the wife also being named beneficiary in this policy.

At various times during the years 1936 and 1937 the bankrupt borrowed monies from the two insurance companies on these policies. In all, the sum of $1,150 was thus advanced by the Metropolitan Life Insurance Company, and $1,105.98 by the Equitable Life Assurance Society.

At the hearing before the referee the bankrupt was called as a witness by the trustee. He testified that his wife was and had been doing business under the trade name Acme Hat Company, and that the monies which he borrowed from the insurance companies he gave to his wife to enable her to operate the business of that company. He was asked:

"Q. Did you lend that money to your wife? A. I lent it or gave it to her; I don't know what difference it makes. My wife needed it and I took it out and gave it to her, and she repaid it later."

Continuing, the bankrupt testified that she repaid the loan by direct payments to the insurance companies. It also appears that on November 19, 1940, he had the principal sum of the Equitable policy reduced from $10,000 to $5,000, and at the time of the reduction he obtained a check from the Equitable Life Assurance Society for $729.60, which he endorsed and delivered to the Metropolitan Life Insurance Company.

The bankrupt testified that premiums on the policies were paid by his wife, and that all repayments of loans made on the policies, with the exception of the check just mentioned, were made by his wife.

The wife, called as a witness, testified that she had made the repayments of the loans and the premiums out of her savings and earnings, and from $1,000 which she received as damages resulting from an au-

tomobile accident. She said that she started in business as the Acme Hat Company in 1936, and that the funds that she received from her husband enabled her to run the business when she was short.

No other witnesses were called in this turnover proceeding. The referee filed a very brief memorandum in which he stated, after citing some law relating to exemptions: "The trustee is entitled to an order authorizing him to surrender the policies and obtain the surrender values. The bankrupt should be given the privilege of paying to the trustee a sum equal to the surrender values in order that he may preserve any incidental rights which might otherwise be lost." This memorandum contains no analysis of the testimony, nor even a recital thereof, but concluded with the direction: "Submit findings * * *".

█ Thereupon the attorney for the trustee submitted a proposed order and findings, which were signed by the referee. I am mindful of the practice that findings of the referee are to be accepted by the court if there is substantial evidence to support them. Nevertheless certain of these findings have no such substantial support. This is particularly true of the thirteenth, fourteenth, fifteenth and seventeenth findings of fact. The finding that the testimony of the bankrupt and his wife that premiums on both policies were paid by the wife out of her own funds is unworthy of belief and untrue, has no support in the record. Likewise there is no proof that the wife had knowledge of the insolvency of the bankrupt at the time she paid premiums or paid off the insurance loans. So far as does appear, she used her own funds in so doing. She had her own business, savings and proceeds of her claim arising out of the automobile accident. These findings of the referee are bare conclusions which were drafted for him by the attorney for the trustee.

█ The matter is different in respect to the $729.60 paid to the bankrupt on November 10, 1940, by the Equitable Life Assurance Society when the amount of its policy covering the life of the bankrupt was reduced from $10,000 to $5,000. That sum he diverted from his creditors, while insolvent, in endorsing the check and delivering it to the Metropolitan Life Insurance Company. That sum increased the cash surrender value of the Metropolitan Life Insurance Company policy, and to that extent the cash surrender value of the

Metropolitan Life Insurance Company policy is not exempt under the Insurance Law of the State of New York. The referee's order will be modified in accordance with the foregoing opinion. Settle order on notice.